TIMOTHY COURCHAINE
United States Attorney
District of Arizona
Matthew Williams
Assistant U.S. Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Matthew.Williams3@usdoj.gov

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice
William Hochul III
Shane Butland
Trial Attorneys
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-538-4256
Email: William.Hochul.iii@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No.  CR-26-00673-PHX-SMB (DMF) |
| Plaintiff, | **I N F O R M A T I O N** |
| vs. | **VIO:**   18 U.S.C. § 1349 (Conspiracy to Commit Health Care Fraud) Count 1 |
| Sandra Peters, | |
| Defendant. | 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7); 21 U.S.C. § 853; and 28 U.S.C. § 2461; (Forfeiture Allegation) |

☒ FILED    ☐ LODGED

**Jun 22 2026**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

THE UNITED STATES ATTORNEY'S OFFICE CHARGES:

**BACKGROUND**

At all times relevant to this Information:

**The Medicare Program**

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered, among others, health services provided by skilled nursing facilities, hospices, and home health agencies. Medicare "Part B" covered, among other things, medical items and services provided by physicians, nurse practitioners, group practices, and other qualified health care providers, that were medically necessary and ordered by licensed medical doctors or qualified health care providers.

4. Physicians, nurse practitioners, group practices, and other health care providers (collectively, "providers") that provided services to beneficiaries were able to apply for and obtain a "provider number." A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for items and services provided to beneficiaries.

5. To enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute.

Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

6. A Medicare claim was required to contain certain information, including: (a) the beneficiary's name; (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring or rendering physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number or National Provider Identifier. The claim form could be submitted in hard copy or electronically via interstate wire.

7. When submitting claims to Medicare for reimbursement, providers were required to certify that: (a) the contents of the forms were true, correct, and complete; (b) the forms were prepared in compliance with the laws and regulations governing Medicare; and (c) the items and services were reasonable and medically necessary.

8. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations.

9. Medicare covered access to certain bioengineered skin substitutes, including some amniotic membrane allografts made from human placental tissue ("allografts"). These allografts were applied over open wounds to assist with wound closure or skin growth. Medicare reimbursed providers for certain allografts furnished to Medicare beneficiaries only if the allografts were medically reasonable, medically necessary for the treatment or diagnosis of the beneficiary's illness or injury, accurately documented, provided as represented to Medicare, and not procured through illegal kickbacks or bribes.

### The Defendant and Related Entities

10. Defendant SANDRA PETERS was a resident of Saint Johns, Florida, a registered nurse licensed by the State of Florida, and a sales representative for Apex Medical LLC ("Apex").

11. Apex was a limited liability company formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona. Apex arranged for and recommended

the ordering and purchasing of allografts sold by Company 1. Apex also referred patients to APX Mobile Medical LLC ("APX") for the furnishing of allografts purchased from Company 1. Apex was owned and operated by Alexandra Gehrke.

12.    APX was a limited liability company formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona. APX was an enrolled Medicare provider and submitted claims to Medicare for payment, including claims for the furnishing of allografts purchased from Company 1.

13.    Company 1 was a limited liability company formed under the laws of Texas, with its principal place of business in Fort Worth, Texas. Company 1 was a wholesale distributor of various allografts.

**<u>COUNT 1</u>**
**18 U.S.C. § 1349**
**(Health Care Fraud Conspiracy)**

14.    Paragraphs 1 through 13 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

15.    In or about 2023, within the District of Arizona and elsewhere, defendant SANDRA PETERS did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the United States to execute a scheme and artifice to defraud Medicare, a health benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**Purpose of the Conspiracy**

16.    It was the purpose of the conspiracy for PETERS and others, known and unknown to the United States Attorney's Office and the Criminal Division of the United States Department of Justice, to unlawfully enrich themselves by, among other things:

- 4 -

(a) submitting and causing the submission of false and fraudulent claims to Medicare for items that were (i) medically unreasonable and unnecessary, (ii) ineligible for reimbursement, and (iii) procured through illegal kickbacks and bribes; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of PETERS and her co-conspirators, and to further the fraud.

**Manner and Means**

The manner and means used by PETERS and others, individually and through the entities described above, to effect the object of the conspiracy and scheme to defraud included the following:

17. PETERS, as a sales representative with Apex, identified elderly Medicare beneficiaries with a wound or wounds of any stage to which Company 1 allografts could be applied.

18. PETERS, based on her own assessment, ordered and arranged for and recommended the ordering of Company 1 allografts to be applied to the patients' wound or wounds. The allografts were procured through illegal kickbacks and bribes, medically unnecessary, and ineligible for Medicare reimbursement.

19. PETERS referred the patients she identified to APX, which contracted with nurse practitioners, including Jorge Kinds, to apply the allografts that PETERS ordered and recommended to be ordered. APX billed Medicare for the allografts applied to the patients and attendant services.

20. PETERS received illegal kickbacks from Alexandra Gehrke and Apex based on the quantity and sizes of Company 1 allografts that the nurse practitioners, including Jorge Kinds, applied to the patients and that APX billed to Medicare.

21. PETERS received approximately $911,216 in illegal kickbacks from Alexandra Gehrke and Apex in exchange for ordering and arranging for and recommending the purchasing and ordering of Company 1 allografts billed to Medicare.

22.    APX fraudulently billed Medicare approximately $10,233,000 for Company 1 allografts that SANDRA PETERS ordered and recommended to be ordered and that were applied by APX's nurse practitioners, including Jorge Kinds, to Medicare beneficiaries she identified. Medicare paid APX approximately $8,020,320 based on those claims.

All in violation of 18 U.S.C. § 1349.

**<u>FORFEITURE ALLEGATION</u>**
**(18 U.S.C. §§ 981(a)(1)(C), 982(a)(7); 21 U.S.C. § 853; and 28 U.S.C. § 2461)**

23.    The above allegations contained in this Information are hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture against the defendant, SANDRA PETERS, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.

24.    Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), together with Title 28, United States Code, Section 2461, as a result of the foregoing violation as charged in Count 1 of this Information, PETERS shall forfeit to the United States: any property, real or personal (a) which constitutes or is derived from proceeds traceable to the commission of the offense, and (b) that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

25.    Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of the defendant's violation as charged in Count 1 of this Information.

26.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), PETERS shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially

diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

Dated this 18th day of June, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

Digitally signed by MATTHEW WILLIAMS
Date: 2026.06.18 20:24:42 -07'00'

Matthew Williams
Assistant U.S. Attorney

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

William Hochul III
Shane Butland
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice